UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ASHLEY BRADY and STEPHANIE DALLI
CARDILLO, on behalf of themselves and all others
similarly situated,

                          Plaintiffs,

          -against-

BASIC RESEARCH, L.L.C., ZOLLER
LABORATORIES, L.L.C., NICOLE E. POLIZZI
a/k/a/ SNOOKI, DENNIS W. GAY, DANIEL B.
MOWREY and MITCHELL K. FRIEDLANDER,

                          Defendants.

------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   MAR 3 1 2015   ★

**LONG ISLAND OFFICE**

**OPINION AND ORDER**
**13-CV-7169 (SJF)**

FEUERSTEIN, District Judge.

    Defendants Basic Research, L.L.C, Zoller Laboratories, L.L.C., Dennis Gay, Daniel

Mowrey and Mitchell Friedlander ("Basic Research defendants") move to dismiss the First

Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1)

and (6) and to strike certain paragraphs in the FAC pursuant to FRCP 12(f); defendants Dennis

Gay, Daniel Mowrey and Mitchell Friedlander ("individual defendants") move to dismiss

pursuant to FRCP 12(b)(2); and defendant Nicole E. Polizzi ("Polizzi") moves to dismiss

pursuant to FRCP 12(b)(1) and (6).

    For the following reasons: (1) the Basic Research defendants' motion to strike pursuant to

12(f) is **DENIED**; (2) Basic Research's and Polizzi's motions to dismiss the claims against

Power Crystals pursuant to 12(b)(1) are **DENIED**; Polizzi's motion to dismiss plaintiff Brady's

claims pursuant to 12(b)(1) is **GRANTED**; the individual defendants' motion to dismiss

pursuant to 12(b)(2) is **GRANTED** as to Mowrey and **DENIED** as to Gay and Friedlander; Basic

Research's motion to dismiss pursuant to 12(b)(6) is **GRANTED** in part and **DENIED** in part; and Polizzi's motion to dismiss pursuant to 12(b)(6) is **GRANTED** in part and **DENIED** in part.

**I.    Background**

This is a proposed class action on behalf of the purchasers of Zantrex-3 ("Zantrex-3"), Zantrex-3 High Energy Fat Burner ("Fat Burner"), and Zantrex-3 Power Crystals ("Power Crystals"; collectively "Zantrex"), which are marketed by defendants as clinically proven weight control supplements.  FAC ¶ 1.

*Parties*

Plaintiff Ashley Brady ("Brady") is a citizen of New York who purchased a bottle of Zantrex-3 from a CVS pharmacy located in Nassau County, New York.  *Id.* at ¶ 16.  Plaintiff Stephanie Cardillo ("Cardillo") is a citizen of New Jersey who purchased Fat Burner through the Amazon website for delivery to her residence in Snow Hill, Maryland.  *Id.* at ¶ 17.

Defendant Basic Research, LLC ("Basic Research"), a limited liability company with its principal place of business at 5742 Harold Gatty Drive, Salt Lake City, Utah, develops, manufactures, promotes, markets, distributes, and/or sells Zantrex in the United States.  *Id.* at ¶ 19.  Defendant Zoller Laboratories, LLC ("Zoller") is a limited liability company and a wholly owned subsidiary of Basic Research created for the sole purpose of manufacturing, promoting, marketing, distributing, and/or selling Zantrex in the United States; Zoller's corporate office is also 5742 Harold Gatty Drive, Salt Lake City, Utah.  *Id.* at ¶¶ 23-24.  Defendant Dennis Gay ("Gay") is a citizen of Utah and an officer and principal shareholder of Basic Research and Zoller, who formulates, directs, controls or participates in the alleged acts and/or business practices.  *Id.* at ¶ 25.  Defendant Daniel Mowrey ("Mowrey") is a citizen of Utah and principal

-2-

shareholder of Basic Research and the Director of Scientific Affairs. *Id.* at ¶ 28. Defendant

Mitchell Friedlander ("Friedlander"), a citizen of Utah, is a marketing consultant in the

development, manufacture, endorsement, advertising, marketing and promotion of Zantrex. *Id.*

at ¶ 32. Defendant Nicole E. Polizzi is a citizen of New York and a paid spokesperson for Zoller,

and has appeared in nearly every advertisement for Zantrex. *Id.* at ¶ 38.

### *Plaintiffs' Claims*

Plaintiffs allege that defendants: (1) violated the Magnuson-Moss Warranty Act, 15

U.S.C. §§ 2301 *et seq.*; (2) breached express warranties; (3) violated New York's General

Business Law § 349; (4) the Maryland Consumer Protection Act; (5) negligently and (6)

fraudulently misrepresented Zantrex's effectiveness; and (7) were unjustly enriched.

## II.    Discussion

### A.    Basic Research Defendants' Motion to Strike

#### 1.    Legal Standard

Pursuant to FRCP 12(f), the court may, *sua sponte* or upon motion, "strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter." " 'Immaterial' matter is that which has no essential or important relationship to the

claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are

not necessary to resolve, the disputed issues.' " *Lynch v. Southampton Animal Shelter Found.,*

*Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (quoting *In re Methyl Tertiary Butyl Ether (MTBE)*

*Prods. Liab. Litig.*, 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005)). "A scandalous allegation is one

that reflects unnecessarily on the defendant's moral character, or uses repulsive language that

detracts from the dignity of the court." *Cabble v. Rollieson*, No. 04 Civ. 9413, 2006 WL 464078,

at *11 (S.D.N.Y. Feb. 27, 2006)).

"[M]otions to strike 'are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation.' " *Crespo v. New York City Transit Auth.*, No. 01 Civ. 0671, 2002 WL 398805, at *11 (E.D.N.Y. Jan. 07, 2002) (quoting *Lennon v. Seaman*, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999)). To prevail on a 12(f) motion, the moving party must demonstrate that: "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (citing *Koch v. Dwyer*, No. 98 Civ. 5519, 2000 WL 1458803, at *1 (S.D.N.Y. Sept. 29, 2000)).

## 2.   Basic Research Defendants' Motion to Strike Under FRCP 12(f)

The Basic Research defendants seek to strike paragraphs 33-35 of the FAC on the grounds they are immaterial and impertinent.  The paragraphs at issue pertain to defendant Freidlander and relate to past censures by government agencies.  The FAC alleges that on September 10, 1985, the United States Postal Service ("USPS") issued "Cease and Desist" and "False Representation" orders against Freidlander in connection with his activities concerning the marketing and sale of weight loss dietary supplements.[1]  FAC ¶ 33.  The USPS found that reports cited by Friedlander did not support the products' claims that they: (1) caused weight loss in virtually all users without dieting or exercise; (2) prevented foods from being converted into stored fat; (3) were supported by scientifically sound clinical studies; and (4) allowed obese users

---

[1]  These supplements are not at issue in this case.

to lose weight without changing their eating habits. *Id.* The USPS orders required Friedlander and his companies to cease and desist from further false claims about the effectiveness of the weight loss products. *Id.*

On September 30, 1985, the USPS issued another decision finding that Friedlander's advertisements for three (3) breast enlargement products were materially false as a matter of fact. FAC ¶ 34. Contrary to Friedlander's advertisements, the products would not cause an increase in breast size and the USPS ordered Friedlander to cease and desist from further false claims about the effectiveness of his products. *Id.*

On February 26, 1986, following a six (6) day bench trial in an action brought by the Department of Justice and the Federal Trade Commission, the Southern District of Florida permanently enjoined Friedlander from advertising that his products caused weight loss without requiring users to restrict calorie intake or exercise. *Id.* at ¶ 35.

Plaintiffs argue that the allegations are not offered as evidence of Friedlander's character,[2] but to show his knowledge, intent and willfulness, which are admissible purposes under Federal Rule of Evidence ("FRE") 404(b)(2), which provides: "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

"The Second Circuit follows an 'inclusionary' approach to 'other crimes, wrongs, or acts' evidence, that is, such evidence is admissible to prove matters other than the defendant's criminal

---

[2] Federal Rule of Evidence 404(b)(1) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.".

propensity." *Carofino v. Forester*, 450 F. Supp. 2d 257, 271 (S.D.N.Y. 2006) (citing *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996); *United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988); *Ismail v. Cohen*, 706 F. Supp. 243, 252 (S.D.N.Y. 1989)).

Evidence supporting the allegations is admissible under FRE 404(b)(2) to demonstrate that defendant: (1) intended to defraud plaintiffs by making false representations concerning Zantrex; (2) knew plaintiffs would rely upon the false representations; and (3) knew that making such false statements about his weight loss products was actionable. *See Tuccillo v. Geisha NYC, LLC*, 635 F. Supp. 2d 227, 236 n.4 (E.D.N.Y. 2009) (finding evidence of a prior attempt to register an identical or virtually identical mark "highly probative" on the issue of intent and knowledge under FRE 404(b)).

The allegations have bearing on this case because the nature of the false advertising claims for which Friedlander was censured, i.e., weight loss and breast enhancement, are virtually identical to the FAC's allegations concerning Friedlander's weight loss claims with respect to Zantrex. *See, e.g.*, FAC ¶¶ 7, 56-61. Although permitting the allegations to stand may result in prejudice to Friedlander, their probative value outweighs any prejudice. *See* Fed. R. Evid. 403[3]; 404(b). In addition, this evidence may be used to impeach Friedlander's credibility. For these reasons Basic Research defendants' motion to strike is denied.

---

[3] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**B.    Basic Research Defendants' and Polizzi's Motions to Dismiss Pursuant to FRCP 12(b)(1)**

**1.    Legal Standard**

Pursuant to Article III, § 2 of the United States Constitution, the jurisdiction of the federal courts is limited to "Cases" and "Controversies," which "restricts the authority of the federal courts to resolving 'the legal rights of litigants in actual controversies.' " *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)). Thus, federal courts require that a party have a legally cognizable interest in a case's outcome to "ensure[] that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Id.*

Where there is no case or controversy, FRCP 12(b)(1) provides that a party may move to dismiss a case for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In order to survive a defendant's motion to dismiss for lack of subject matter jurisdiction, a plaintiff must allege facts "that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). In deciding such a motion, the Court may consider materials beyond the pleadings, *Makarova*, 201 F.3d at 113, and must "accept as true all material factual allegations in the complaint," *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).

2.  **Basic Research Defendants' and Polizzi's 12(b)(1) Motions**

Basic Research defendants and Polizzi move to dismiss plaintiffs' claims against Power Crystals because the FAC fails to allege that either named plaintiff used Power Crystals and therefore states no injury-in-fact.

"The hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation." *Evans v. Lynn*, 537 F.2d 571, 591 (2d Cir. 1975). Standing to sue, in the Constitutional sense, "is the showing by a plaintiff that his particular grievance meets this standard, the 'essence' of which is the presence of 'injury in fact' suffered by the plaintiff as a result of the defendant's actions." *Id.* (internal footnotes omitted). " 'Article III standing consists of three 'irreducible' elements: (1) *injury-in-fact,* which is a 'concrete particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability,* or a non-speculative likelihood that the injury can be remedied by the requested relief.' " *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 574 (S.D.N.Y. 2009) (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008)).

Plaintiffs contend that under *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 n.9 (2d Cir. 2012),[4] similar arguments are premature at the pleading stage

---

[4] The Second Circuit held that the district court mistakenly assumed that plaintiff, a health and welfare fund, could serve as class representative only on behalf of individuals who had purchased the same securities. *NECAIBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 n.9 (2d Cir. 2012). "What the district court thought was a 'standing' issue was in reality a class certification issue." *Id.*

-8-

and should be addressed at the class certification stage. In *DiMuro v. Clinique Labs., LLC*, 572 Fed. App'x 27, 29 (2d Cir. 2014), the Second Circuit distinguished *NECA*, holding that when identical representations are in different offering documents, where they are made does not effect the allegation that the representations are false.[5] *Id.*

The FAC alleges that Zantrex advertises that it provides "rapid weight loss and incredible energy." FAC ¶¶ 56. Zantrex-3 is "the first and only non-ephedra 'diet pill' with a kick," that is a "new category of bifurcated weight-loss compounds providing both rapid weight loss and incredible energy combined into a single power-packed Super Pill." *Id.* at ¶ 57. Fat Burner allegedly provides the same high energy component that the Zantrex brand is famous for and contains a clinically tested fat burner. *Id.* at ¶ 60. Power Crystals, allegedly Zantrex-3 in a different form, is described as "the same high-energy weight-loss formula as the original Zantrex-3, but in a convenient great tasting drink mix." *Id.* at ¶ 61.

"Courts are split as to whether plaintiffs have standing to assert claims relating to products they themselves did not purchase, but which are substantially similar to products they did purchase." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013). "Some federal courts have held, as a matter of law, that a plaintiff lacks standing to assert claims relating

---

[5] In *DiMuro*, by contrast, the seven (7) different products at issue had different ingredients and defendant Clinique had made different advertising claims for each product. 572 Fed. App'x at 29. The court held that unique evidence would be required to prove that each product's advertising claims were false and misleading and thus, claims by the purchaser of one (1) product would not raise concerns "nearly identical" to claims by purchasers of a different product, and accordingly, the class had no standing to brings claims for the unpurchased products. *Id.*

to products they did not purchase." *Jovel v. I-Health, Inc.*, No. 12 Civ. 5614, 2013 WL 5437065, at *10 (E.D.N.Y. Sept. 27, 2013) (citing cases). "Other courts have held that 'the standing inquiry is more appropriately resolved on a motion for class certification.' " *Quinn*, 958 F. Supp. 2d at 541 (quoting *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)). "Accordingly, such courts routinely deny rule 12(b)(1) motions to dismiss and, instead, reserve the standing analysis until a motion for class certification." *Id.* (citing *Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012)) ("[W]e agree with the numerous recent decisions that have concluded that Defendants' argument is better taken under the lens of typicality or adequacy of representation, rather than standing.").

"[W]here courts have held that plaintiffs may have standing to assert claims for unnamed class members based on products the plaintiffs themselves did not purchase, the 'critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased.' " *Jovel*, 2013 WL 5437065, at *10 (quoting *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11 Civ. 2910, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012)).

Accepting the FAC's allegations regarding the similarities of the Zantrex-3 product line as true, there are sufficient similarities between the purchased products and Power Crystals to withstand the motion at this time. *See Jovel*, 2013 WL 5437065, at *10 (holding that in light of the sufficient similarities among the products at issue, questions of whether common issues predominated or whether the named plaintiff could adequately represent absent class members would be addressed during class certification). For these reasons, the Basic Research defendants' and Polizzi's motion to dismiss the claims against Power Crystals pursuant to FRCP 12(b)(1) are denied.

-10-

### 3.      Polizzi's 12(b)(1) Motion to Dismiss Brady's Claims

Defendant Polizzi moves to dismiss plaintiff Brady's claims against her because Brady's 2010 purchase predated Polizzi's 2011 endorsement of Zantrex-3. FAC ¶ 16; Dec. Daines ¶¶ 5-6. The FAC alleges that in purchasing Zantrex-3, Brady read and relied on the representations contained on the packaging but does not allege she relied upon Polizzi's advertisements. FAC ¶ 16.

As discussed above, Article III standing requires that plaintiff have an injury-in-fact, i.e., a concrete particularized harm to a legally protected interest. Given the FAC's allegations, Brady cannot plausibly allege an injury traceable to Polizzi and, accordingly, Polizzi's motion to dismiss Brady's claims for lack of subject matter jurisdiction is granted and Brady's claims are dismissed as to Polizzi.

### C.      Individual Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(2)

#### 1.      Legal Standard

Federal Rule of Civil Procedure 12(b)(2) "permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery." *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 562 (E.D.N.Y. 2011). In considering a motion to dismiss for lack of personal jurisdiction, a court may rely on materials beyond the pleadings. *Phillips v. Reed Group, Ltd.*, 955 F. Supp. 2d 201, 225 (S.D.N.Y. 2013) (when considering a 12(b)(2) motion, "the Court may also rely on submitted affidavits and other supporting materials submitted in relation to the motion"). "When responding to a Rule 12(b)(2) motion to dismiss . . . the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez &*

-11-

*Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999). Where a court opts to determine the jurisdictional

issue without an evidentiary hearing or discovery, a plaintiff need "make only a prima facie

showing of jurisdiction through its own affidavits and supporting materials." *Marine Midland*

*Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981). When, however, a court permits the

parties to engage in jurisdictional discovery, the party seeking to establish jurisdiction bears "the

burden of proving by a preponderance of the evidence that personal jurisdiction exists." *Landoil*

*Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1990). In any

event, the "pleadings and affidavits are construed in the light most favorable to the plaintiff, and

all doubts are resolved in its favor." *Mazloum v. Int'l Commerce Corp.,* 829 F. Supp. 2d 223,

227 (S.D.N.Y. 2011).

      To determine personal jurisdiction over individual defendants, a court first looks to the

law of the state in which the district court sits. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242

(2d Cir. 2007) (citing *Kronisch v. United States,* 150 F.3d 112, 130 (2d Cir. 1998)); *see*

*Arrowsmith v. United Press Intern.,* 320 F.2d 219, 223 (2d Cir. 1963) (personal jurisdiction over

a defendant in a "diversity action is determined by the law of the forum in which the court sits.").

If a court determines that it has personal jurisdiction under state law, it must then consider

"whether asserting jurisdiction under that provision would be compatible with requirements of

due process established under the Fourteenth Amendment to the United States Constitution." *Id.*

*See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**B.    Individual Defendants' 12(b)(2) Motion**

**1.    New York's CPLR § 302**

Plaintiffs argue that the Court has personal jurisdiction over the individual defendants because corporate defendants Basic Research and Zoller acted as their agents in New York. Pursuant to New York's Civil Practice Law and Rules § 302(a)(1)-(3), a "court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state . . .; or 3. commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.  N.Y. C.P.L.R. § 302 (McKinney 2015).

In *Kreutter v. McFadden Oil Corp.*, the New York Court of Appeals held that "the fiduciary shield rule is not available to defeat jurisdiction under the New York long-arm statute," 522 N.E.2d 40, 47 (N.Y. 1988), and thus, "an out-of-state corporate officer who has not personally transacted business in New York, can still be subject to personal jurisdiction under § 302(a)(1)[6] of New York's long-arm statute, if it can be shown that the corporation transacted business in New York as the officer's agent," *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323

---

[6] The holding applies to § 302 in its entirety. *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 984 (S.D.N.Y. 1992) (citing *Kreutter*, 522 N.E.2d at 44).

(S.D.N.Y. 1998). "Further, this Court may exercise jurisdiction over a defendant who acted through an agent even if that defendant never physically entered New York." *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000) (citing *Kreutter*, 522 N.E.2d at 45). "To establish that the out-of-state defendant acted through an agent," plaintiffs need not establish a formal agency relationship, but need "only convince the court that [the agent] engaged in purposeful activities in this State in relation to [plaintiffs'] transaction for the benefit of and with the knowledge and consent of the [ ] defendants and that they exercise[d] some control over [the agent] in the matter." *Id.* (citing *Karabu Corp.*, 16 F. Supp. 2d at 323; *Kreutter*, 522 N.E.2d at 44). "Plaintiffs' allegations must "sufficiently detail the defendants' conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation.' " *Id.* (quoting *Karabu Corp.*, 16 F. Supp. 2d at 324).

### a.    *Defendant Gay*

The FAC alleges that Basic Research and Zoller promote, market, distribute and/or sell Zantrex to hundreds of thousands of consumers in New York. FAC ¶¶ 19, 24. These allegations, directly related to plaintiffs' claims, are sufficient to show that the corporations engaged in purposeful activities in New York. The FAC also alleges that Gay is an officer, principal shareholder and CEO of Basic Research and Zoller with final decision making authority over

labeling, advertising, and media placement for Zantrex, including the content of the advertising.[7]
*Id.* at ¶ 25; Dec. Gay ¶ 8.  Within the Basic Research business enterprise, Gay is ultimately
responsible for placing the advertisements for Zantrex into the stream of commerce.  *Id.*  These
allegations demonstrate Gay's control over the corporations and that they acted with his
knowledge and consent and therefore Basic Research and Zoller served as Gay's agents and
plaintiff has established a prima facie showing of personal jurisdiction pursuant to § 302(a)(1).

### *Due Process Considerations*

If a court determines that it may exercise personal jurisdiction over a defendant in
accordance with the forum state's law, it must then consider whether the exercise of personal
jurisdiction comports with due process.  "A court may exercise jurisdiction over only those
defendants that have 'minimum contacts' with the forum state 'such that the maintenance of the
suit does not offend 'traditional notions of fair play and substantial justice.' " *Phillips v. Reed
Group, Ltd.*, 955 F. Supp. 2d 201, 227 (S.D.N.Y. 2013) (quoting *Int'l Shoe Co. v. Washington*,
326 U.S. 310, 316 (1945)).  "In judging minimum contacts, a court properly focuses on 'the
relationship among the defendant, the forum, and the litigation.' " *Calder v. Jones*, 465 U.S.
783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  To establish the
minimum contacts necessary to justify "specific" jurisdiction, the claim must arise out of or
relate to the defendant's contacts with the forum state, *Helicopteros Nacionales de Columbia*,

---

[7]   Defendant Gay's declaration in support states that he is employed by Bydex
Management, LLC ("Bydex"), an employee management company whose employees provide
services to other companies, including Basic Research and Zoller. Dec. Gay ¶ 8. An online
search for Bydex reveals that its corporate address is the same as Basic Research's and Zoller's
and that its web page link is "www.basicresearch.org." *See*
http://www.manta.com/c/mb5k2v5/bydex-management-llc (last visited Mar. 27, 2015).

*S.A. v. Hall*, 466 U.S. 408, 414 (1984), such that defendant "purposefully availed" itself of doing business and could foresee being "haled into court" in the state. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 408, 414 (1980).

Plaintiffs' claims arise out of Gay's agents' contacts with New York through which the corporations conducted business in the state. "If the court finds that [a] defendant has "purposefully availed" himself of the forum, it may also consider such other factors as: the burden on the defendant, the interests of the forum state, plaintiff's interest in obtaining relief, as well as judicial economy, and the 'shared interest of the several States in furthering fundamental substantive social policies.' " *Kinetic Instruments*, 802 F. Supp. at 986 (quoting *World-Wide Volkswagon*, 444 U.S. at 292). In light of Gay's position as CEO of defendants Basic Research and Zoller, it was reasonably foreseeable that he would be haled into a foreign jurisdiction to answer for the corporations' actions. Additionally, New York has an interest in addressing the alleged injuries to its citizens caused by Zantrex, which outweighs any burden on defendant. Further, because this Court has personal jurisdiction over defendant corporations, judicial economy will be served by litigating all the issues in one (1) forum. For these reasons, the exercise of personal jurisdiction over Gay comports with due process.

### b.    *Defendant Mowrey*

The FAC alleges that Mowrey (allegedly responsible for developing Zantrex), is a citizen of Utah, a principal shareholder in Basic Research and Director of Scientific Affairs. FAC ¶¶ 28, 29. According to Mowrey's declaration, he had an underlying ownership interest in Basic Research which he sold in 2004 and was employed by Bydex from January 2008 until October

-16-

2010 when he retired. Dec. Mowrey ¶¶ 7, 8. While employed by Bydex, Mowrey's primary
responsibilities were research and product development and he had no control over, nor did he
determine, which products Basic Research or Zoller marketed, distributed or sold. *Id.* at ¶ 9.

These allegations are insufficient to show that Basic Research or Zoller acted as
Mowrey's agent or that Mowrey exercised control over the companies. Courts have, however,
"defined 'agent' broadly to include not only a defendant's formal agents, but also, under certain
circumstances, a defendant's co-conspirators." *Chrysler Capital Corp. v. Century Power Corp.*,
778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) (citing *Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F.
Supp. 798, 806–07 (S.D.N.Y.1975). "It is well established that acts committed in New York by
the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the
out-of-state defendant to jurisdiction under CPLR 302(a)(2)." *Id.* (citing cases). To establish
jurisdiction on a conspiracy theory, a plaintiff must: (1) establish a prima facie factual showing of
a conspiracy; and (2) allege specific facts warranting the inference that the defendant was a
member of the conspiracy. *Id.* (citing *Singer v. Bell*, 585 F. Supp. 300, 303 (S.D.N.Y. 1984).

"A prima facie factual showing of conspiracy must allege, in addition to the primary tort,
four elements: '(a) a corrupt agreement between two or more persons, (b) an overt act in
furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan
or purpose, and (d) the resulting damage or injury.' " *Johnson & Johnson v. Azam Intern.
Trading*, No. 07 Civ. 4302, 2013 WL 4048295, at *7 (E.D.N.Y. Aug. 9, 2013) (quoting *In re
Sumitomo*, 120 F. Supp. 2d at 339). In addition to the primary tort of fraud, plaintiffs allege: (1)
that Gay, Mowrey and Friedlander conspired with each other and with Basic Research and Zoller

-17-

to commit fraud by producing, marketing and selling Zantrex in New York knowing that the products were worthless and ineffective (FAC ¶¶ 172-77); (2) Basic Research and Zoller performed an overt act in furtherance of the fraud by marketing and selling the product in New York; (3) the individual defendants intended to induce and actually induced Brady and the putative class members to purchase Zantrex based upon fraudulent marketing (*id.* at ¶ 176); and (4) that they suffered economic and bodily harm. *Id.* at ¶¶ 16-18.

To establish Mowrey's part of the conspiracy, plaintiffs cite to testimony by Mowrey and Gay at the Hearing before the Subcommittee on Oversight and Investigations on June 16, 2004. Dec. Koppel, Exh. A. Although Gay states that he relied upon Mowrey's and another expert's knowledge to create Zantrex, based upon the age of the testimony, its content and the fact that Mowrey sold his interest in Basic Research in 2004 and retired from Bydex in 2010, the allegations are insufficient to establish that Mowrey was part of a conspiracy. Accordingly, Mowrey's motion to dismiss for lack of personal jurisdiction is granted.

### c. *Defendant Friedlander*

Plaintiffs allege that Friedlander is the self-proclaimed "marketing guru" for Basic Research and has been described as the "idea man" behind numerous dietary supplement advertising campaigns on behalf of Gay, Mowrey, Basic Research and Zoller. Friedlander derives revenue from sales of Zantrex pursuant to a 1993 royalty agreement and/or a covenant not to sue between himself and Basic Research. FAC ¶ 32. Friedlander alleges that he lived in Utah, presently resides in Nevada and is employed by Bydex to perform services for Basic Research and Zoller, including leading a collaborative team to create advertisements for Basic

-18-

Research and its affiliates.  Dec. Friedlander ¶¶ 3, 4, 9.

In order to establish that Basic Research was Friedlander's agent in New York, plaintiffs must show that the corporations (1) engaged in purposeful activities in New York, (2) for the benefit of and with the knowledge and consent of Friedlander and (3) that he exercised some control over the corporations in that transaction.  *See In re Sumitomo*, 120 F. Supp. 2d at 336.  As discussed above, Basic Research and Zoller engaged in purposeful activities in New York; for the benefit and on behalf of Friedlander, who received royalties from the sale of Zantrex in New York; and through Bydex, where Friedlander worked and exercised control over the corporation's advertising for the Zantrex line.  For these reasons, the Court has personal jurisdiction over Freidlander pursuant to CPLR § 302(a)(1).

### *Due Process Considerations*

Plaintiffs' claims arise out of, *inter alia*, Basic Research's marketing and advertising in New York.  Based upon the prior investigations and censures and Friedlander's declaration that he is responsible for Basic Research's advertising, it was foreseeable that he could be sued in a foreign state to respond to allegations about false advertising in connection with Zantrex.  In addition, judicial economy will be served by litigating the claims against Friedlander in this forum and, thus, the exercise of personal jurisdiction comports with due process.  Friedlander's motion to dismiss for lack of personal jurisdiction is therefore denied.

**D.  Basic Research Defendants' and Polizzi's Motions to Dismiss Pursuant to FRCP 12(b)(6)**

**1.  Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that upon motion, a FAC may be dismissed for failure to state a claim upon which relief may be granted.  To determine whether a complaint should be dismissed for failure to state a claim, the court must assume as true all allegations contained in the complaint.  *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). However, it is "well settled that conclusory allegations merely stating general legal conclusions necessary to prevail on the merits of a claim, unsupported by factual averments will not be accepted as true."  *ECOR Solutions, Inc. v. Malcolm Pirnie, Inc.*, No. 02 Civ. 1103, 2005 WL 1843253, at \*3 (N.D.N.Y. July 29, 2005).  Thus, when considering FRCP 12(b)(6) motions, the court must assess the legal feasibility of the complaint and whether a plaintiff pleaded claims for which he or she is entitled to discovery.  *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000); *Chance*, 143 F.3d at 701.  The Supreme Court has held that a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Court held that courts should entertain a motion to dismiss by following a two-pronged approach: "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the

-20-

framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

The Federal Rules of Civil Procedure require a "short plain statement of the claim showing that the pleader is entitled to relief." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The pleading must also set forth facts to provide a defendant with fair notice of the nature of the claim. *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

### 2.   Basic Research Defendants' and Polizzi's 12(b)(6) Motions

#### a.   *Magnuson-Moss Warranty Act*

The Magnuson-Moss Warranty Act ("MMWA") provides that " 'a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages . . . .". *Enobakhare v. Carpoint, LLC*, No. 08 Civ. 4798, 2011 WL 703920, at *8 (E.D.N.Y. Jan. 10, 2011) (quoting 15 U.S.C. § 2310(d)(1)).

Pursuant to 15 U.S.C. § 2301(6)(A), the term "written warranty" is defined as: "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." Defendants argue that if a product does not affirm or promise (1) that it is defect free or (2) will meet a specific level of performance, it is

-21-

not a written warranty within the meaning of the MMWA.

Courts have held that "the MMWA makes a warrantor directly liable to a consumer for breach of a written warranty," *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (citing *Shuldman v. DaimlerChrysler Corp.*, 768 N.Y.S.2d 214, 216 (N.Y. App. Div. 2003)), and that the MMWA "merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages," *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 3311, 2013 WL 3936193, at *3 n.2 (S.D.N.Y. July 26, 2013), and thus, plaintiffs' breach of express warranty and MMWA claims stand or fall together.

Plaintiffs' FAC alleges that Zantrex products are consumer products as defined by 15 U.S.C. § 2301(1); plaintiffs and the proposed class members are consumers as defined by 15 U.S.C. § 2301(3); and defendants are suppliers and warrantors as defined by 15 U.S.C. § 2301(4) and (5). FAC ¶¶ 142-144. Defendants issued written warranties, as defined by 15 U.S.C. § 2301(6), representing that it would provide consumers with "Rapid Weight Loss" and "456% More Weight Loss Than America's #1 selling Ephedra-Based Diet Pill," in "a little over 6 weeks" of use "WITHOUT diet and exercise." *Id.* at ¶ 145. As to Power Crystals, defendant issued written warranties that it would provide consumers with "Rapid Weight Loss." *Id.* at ¶ 146. With respect to Fat Burner, defendants issued written warranties representing that it would provide consumers with "Rapid Fat Loss"; is effective for "weight loss"; and is a "clinically tested fat burner shown to encourage lipolysis[8] and inhibit the activity of phosphodiesterase." *Id.* at ¶ 147. The Zantrex products do not conform to these representations because they are false

---

[8] Defined as the release of fat from mature cells.

and misleading as demonstrated by competent and reliable scientific evidence and, thus, defendants violated the MMWA and caused injuries and economic damages to plaintiffs. *Id.* at ¶¶ 148-150.

### b.    *Breach of Express Warranty*

#### *New York Law*

"New York breach of express warranty claims require (I) a *material statement* amounting to a warranty; (ii) the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; (iii) the *breach* of this warranty; and (iv) injury to the buyer *caused* by the breach." *Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d. 381, 391 (E.D.N.Y. 2013) (citing *CBS Inc. v. Ziff-Davis Pub. Co.*, 553 N.E.2d 997, 1000-01 (N.Y. 1990)).

The FAC alleges that defendants advertised and marketed Zantrex with the warranties and statements in the preceding section, *see* ¶¶ 153-155; that plaintiff Brady relied upon the representations in purchasing Zantrex-3, *see* ¶ 16; that the warranties are false and misleading based upon reliable scientific evidence, *see* ¶¶ 51-112; and that plaintiffs and the proposed class were injured as a direct and proximate result of defendants' breaches, *see* ¶ 157.

Defendants argue that the claim fails for lack of privity. However, "courts have held that a plaintiff need not be in privity with a defendant to bring . . . a claim based on misrepresentations contained in 'public advertising or sales literature.'" *Weisblum v. Prophase Labs, Inc.*, No. 14 Civ. 3587, 2015 WL 738112, at *10 (S.D.N.Y. Feb. 20, 2015) (quoting *Prue v. Fiber Composites, LLC*, No. 11 Civ. 3304, 2012 WL 1314114, at *9 (E.D.N.Y. Apr. 17, 2012)). Based upon the foregoing, Basic Research defendants' motion to dismiss the MMWA and New York breach of express warranty claims pursuant to 12(b)(6) is denied. As discussed,

-23-

*supra*, Brady's claims against Polizzi are dismissed for lack of subject matter jurisdiction.

### *Maryland Law*

"Under Maryland law, recovery for breach of warranty requires proof of three elements: (1) the existence of a warranty, (2) a breach of the warranty, and (3) harm proximately caused by the breach." *Klein v. Sears Roebuck and Co.*, 773 F.2d 1421, 1424 (4th Cir. 1985) (citing *Mattos, Inc. v. Hash*, 368 A.2d 993 (Md. 1977)).

That FAC alleges that plaintiff Cardillo purchased Fat Burner from Zoller, which represented that it was a safe and effective "fat burner" providing "Rapid Fat Loss" of "actual body fat." FAC ¶ 17. After two (2) days of taking the product as directed, Cardillo fell ill and was admitted to the hospital where doctors determined that she was experiencing heart palpitations from using the product. *Id.* at ¶ 18. Based upon the allegations, the FAC states a breach of express warranty claim under Maryland law and the MMWA and Basic Research defendants' motion to dismiss for failure to state a claim is denied.

With respect to Polizzi, the FAC alleges that Cardillo saw and relied upon Polizzi's representations in Life & Style Magazine and elsewhere that Fat Burner was safe and effective for fat loss and also saw and relied upon Polizzi's advertisement "Snooki's Dirty Little Secret," which also promoted Fat Burner. FAC ¶¶ 17, 117. Accepting these allegations as true, Polizzi's motion to dismiss the breach of express warranty and MMWA claims pursuant to 12(b)(6) is denied.

###### c.  *New York's General Business Law § 349*

New York's General Business Law ("GBL") § 349(a) provides: "Deceptive acts or

practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." GBL § 349 "prohibits deceptive and misleading business practices and its scope is board indeed," *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 213 (N.Y. App. Div. 2010), as it encompasses "virtually all economic activity" and " 'provides needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State,' " *Karlin v. IVF America, Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999) (quoting N.Y. Dept of Law, Mem to Governor, 1963 N.Y. Legis. Ann., at 105). "In order to properly plead a cause of action under GBL § 349, the party pleading the claim "should identify consumer-oriented misconduct which is deceptive and materially misleading to a reasonable consumer, and which causes actual damages." *Wilner*, 893 N.Y.S.2d 208 at 214.

The FAC alleges that Zantrex's warranties, directed at consumers, misrepresented that the products would provide consumers with rapid weight loss within approximately six (6) weeks of use, without diet and exercise. FAC ¶¶ 160, 161. In addition, it alleges that defendants' misrepresentations are materially misleading as to the safety and efficacy of Zantrex, which induces consumers to purchase the products. *Id.* at ¶ 162.

Defendants move to dismiss plaintiffs' GBL claim, arguing that (1) plaintiffs do not point to a representation that is false; and (2) they improperly used the alleged deception as both the act and injury, which is foreclosed by *Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892 (N.Y. 1999). In *Small*, New York's Court of Appeals held that a plaintiff must establish that the injury resulted from the deception, e.g., where a consumer pays a higher price for an item because of the misrepresentation. 720 N.E.2d 892 at 898 n.5. The court specifically rejected the argument that

consumers "who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury." *Id.* at 898. The FAC alleges that "Brady and members of the New York subclass were injured as a result [of the deception regarding the safety and efficacy of Zantrex] because they paid for Zantrex products, which they would not have purchased had they known the true facts."[9] FAC ¶¶162-63.

In addition, the Zantrex packaging in the FAC does not represent that the product is safe and cannot, therefore, amount to a material misrepresentation as a matter of law. *Id.* at ¶¶ 56, 72. For the foregoing reasons, Basic Research defendants' motion to dismiss this claim is granted.[10]

### d.    Maryland's Consumer Protection Statute

Maryland's Consumer Protection Act ("MCPA") makes unlawful any: "Unfair or deceptive trade practices includ[ing] any [d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods," Md. Code Ann., Com. Law § 13-301(9)(i), and that "[a]ny practice prohibited by this title is a violation of this title, whether or not any consumer has in fact been misled, deceived, or damaged as a result of that practice." *Consumer Prot. Div. v. Morgan*, 874 A.2d 919, 941 (Md. 2005) (quoting Md. Code Ann., Com. Law § 13-302).

---

[9] *Cf. Ackerman v. Coca-Cola Co.*, No. 09 Civ. 0395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) (liability under GBL § 349 where "plaintiffs . . . explicitly allege that "[d]efendants command a premium price for vitaminwater by distinguishing it from soft drinks (including their own), and by marketing and advertising it as a fortified beverage, a dietary supplement in liquid form."

[10] Polizzi's motion to dismiss plaintiff Brady's New York claims was granted, *supra*, for lack of subject matter jurisdiction.

The FAC alleges that plaintiff Cardillo is a consumer and that Zantrex is a consumer good under the MCPA. FAC ¶¶ 186-87. Defendants allegedly committed unfair or deceptive acts and practices by making false representations about Zantrex, which were materially misleading as to the safety and efficacy of the products, to induce consumers to purchase the goods. *Id.* at ¶¶ 189-91. As a result, Cardillo was injured by paying for Zantrex, which she would not have purchased had she known the true facts. *Id.* at ¶ 193.

Zantrex does not represent that it is safe and, therefore, Cardillo cannot allege reliance on a statement defendants did not make. Additionally, the packaging included in the FAC represents that Zantrex provides rapid weight loss, intense energy and "546% more weight loss *than the leading ephedra-based diet pill*, (emphasis added)" which may amount to a warranty, but not to actionable fraud. Therefore, Basic Research defendants' and Polizzi's motions to dismiss are granted for failure to state a claim under the MCPA.

### e.   *Plaintiffs' Fraud and Negligent Misrepresentation Claims*

Under New York law, a claim for fraud requires a false misrepresentation of a material fact, *Kottler v. Deutsche Bank AG,* 607 F. Supp. 2d 447, 462 (S.D.N.Y. 2009), as do claims for negligent misrepresentation, which require "a false representation that [a defendant] should have known was incorrect, *Childers v. New York and Presbyterian Hosp.*, 36 F. Supp. 3d 292, 310 (S.D.N.Y. 2014). As plaintiffs have not established a false representation, Basic Research defendants' motion to dismiss the New York based fraud and negligent misrepresentation claims is granted.

With respect to claims under Maryland law, "[f]raud and negligent misrepresentation

-27-

share common elements. Both require the making of a false statement." *Gross v. Sussex Inc.*, 630 A.2d 1156, 1162 (Md. 1993). Accordingly, plaintiffs do not state a claim under Maryland law and Basic Research defendants' and Polizzi's motions to dismiss the MCPA fraud and negligent misrepresentation claims are granted pursuant to 12(b)(6).

### f. *Unjust Enrichment*

Under New York law, "[i]t is well settled that where a valid warranty governs the subject matter of a suit, a plaintiff cannot recover in quasi-contract, and it is appropriate to dismiss an unjust enrichment claim." *Haag v. Hyundai Motor Amer.*, 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013). As plaintiff Brady has stated a claim with respect to the breach of express warranty, the unjust enrichment claim is dismissed as duplicative.

"In Maryland, a claim of unjust enrichment has three elements: '(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.' " *Stanley v. Central Garden and Pet Corp.*, 891 F. Supp. 2d 757, 766 (D. Md. 2012) (quoting *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007)).

The complaint alleges that plaintiffs conferred a benefit upon defendants by purchasing Zantrex; that defendants had knowledge of the benefits; and have been unjustly enriched in retaining the revenue derived from plaintiff's purchase. FAC ¶¶ 180-182. This claim is dismissed because Cardillo received the product she purchased, and therefore, retention of the purchase price by defendants is not inequitable. Accordingly, Basic Research defendants' and

-28-

Polizzi's motions to dismiss the Maryland unjust enrichment claim is granted.

**E.      Plaintiffs' Request for Leave to Amend the First Amended Complaint**

Plaintiffs' request for leave to amend is denied.  Plaintiffs' dismissed claims is are either

barred as a matter of law or are not actionable based upon the facts and, thus, leave to replead

will not cure the defects.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**III.     Conclusion**

For the foregoing reasons, the Basic Research defendants' motion to strike pursuant to

12(f) is **DENIED**; the Basic Research defendants' and Polizzi's motions to dismiss the claims

against Power Crystals pursuant to 12(b)(1) are **DENIED**; Polizzi's motion pursuant to 12(b)(1)

to dismiss plaintiff Brady's claims under New York law is **GRANTED**; individual defendants'

motion to dismiss pursuant to 12(b)(2) is **GRANTED** as to Mowrey and **DENIED** as to Gay and

Friedlander; Basic Research defendants' motion to dismiss pursuant to 12(b)(6) is **DENIED** as to

the MMWA and breach of express warranties claims and **GRANTED** as to plaintiffs' New York

GBL § 349, MCPA, fraud, negligent misrepresentation and unjust enrichment claims; Polizzi's

motion to dismiss pursuant to 12(b)(6) is **DENIED** as to the MMWA and the Maryland based

express warranty claims and **GRANTED** as to plaintiff Cardillo's MCPA, fraud, negligent

misrepresentation and unjust enrichment claims.

**SO ORDERED**.

Dated: March 31, 2015
       Central Islip, New York

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein, U.S.D.J.